LAWRENCE, Appellant, v. KNIGHT, Respondent.

(223 N. W. 197.)

(File No. 5991. Opinion filed January 26, 1929.)

*Jorgenson & Anderberg,* of Sisseton, for Appellant.
*Babcock & Babcock,* of Sisseton, for Respondent.

MISER, C. Appellant sued respondent to recover damages for conversion, claiming that respondent inserted his name as grantee in a deed to 40 acres listed by appellant with respondent for sale, and refused to account for the purchase price.

Respondent, in his answer and counterclaim, alleged that, on January 20, 1920, he loaned to appellant $325, that this loan was secured by a mortgage on the 40 acres, which mortgage, referred to herein as mortgage A, was thereafter assigned to another; that, on February 4, 1920, he loaned appellant $525, secured by mort-

gage B on said premises, thereafter duly recorded; that, on 'March 30, 1920, he advanced other moneys to appellant which, with the $525 above mentioned, amounted to $1,100; that this was secured by mortgage C, duly recorded and thereafter assigned to another; that on May 10, 1920, appellant executed and delivered mortgage D on said premises to Farmers' Security Bank, to secure a loan of $465; that respondent was the assignee and holder of mortgage D; that, on June 12, 1920, appellant executed and delivered to respondent the deed mentioned in appellant's complaint; that, when so delivered, the name of respondent appeared in such deed E as grantee; and that it was given to secure advances theretofore and thereafter made by respondent to appellant in the sum of $813.25. Respondent prayed: (1) That appellant take nothing; (2) that mortgage D be adjudged to be a lien on the land; (3) that the court find the amount due respondent for advances secured by deed E and adjudge such deed to be a mortgage securing such advances; and (4) that the court decree a foreclosure thereof and payment to respondent of the sums so secured. To this counterclaim, appellant replied with a general denial.

The case was tried to a jury; but, at the conclusion of the evidence, the court dismissed the jury on respondent's motion and thereafter made findings of fact and conclusions of law and rendered judgment in favor of respondent. In this judgment, the amount due respondent on mortgage D was found to be $685, and on deed E, which the court found to be a mortgage, $282.06; and the court directed the sale of the premises to pay the same. For many reasons, this case must be retried.

When the evidence on both sides had been introduced, and prior to the making of the motion to take the case from the jury, respondent, in the presence of the jury, requested that appellant state the theory and grounds upon which she claimed the right to recover. Upon appellant's refusal to do so, an extended discussion took place between counsel for both sides and the court, in the course of which the court remarked: "A large part of the trouble, I think, arises from the pleadings of both parties. * * * I think they are both rather faulty. It is pretty hard to gather from the pleadings just what could be submitted to the jury."

It is certainly true that the question of whether appellant was entitled to have an issue of fact submitted to the jury would have

been much easier to determine had appellant's complaint clearly and definitely set forth her cause of action. But, after an extended discussion as to what the issues were and as to whether respondent's motion should be granted, the court adjourned; and, the following day, the discussion was resumed in part as follows:

"The Court: The theory of the plaintiff as I understand it, or some of the theories are these: That Knight as agent of the plaintiff practiced fraud upon his principal by procuring of her through false misrepresentations the execution and delivery to him of a deed in blank to consummate a pretended sale to some one else for $3,000.00, and that then he filled in his own name as grantee and since then has been holding title in himself. I think that is correct, Mr. Jorgenson?

"Mr. Jorgenson: He converts it to himself.

"The Court: That the plaintiff sold the land to the defendant, you claim this is the legal effect of it, for $3,000.00 less the amount of the mortgages and incumbrances on the land, that is another contention?

"Mr. Jorgenson: Yes.

The Court: And third, that he converted the real estate to his own use; that is also claimed, is it not?

"Mr. Jorgenson: That is what it amounts to."

Inasmuch as this case must be retried for reasons, some of which are hereinafter stated, and inasmuch as it is probable that the pleadings will be amended so as to avoid the confusion above indicated, no useful purpose would be served in determining whether the case should have been submitted to the jury, involving, as such determination would, an analysis of not only the pleadings but of the evidence as well, the former of which was confusing and the latter contradictory.

Among the reasons which call for reversal are the following: The evidence on behalf of respondent showed that the amounts loaned on mortgages B and C and the advances, if any, on deed E were made in numerous payments, some to appellant, some to her husband, some to third persons for them, and that, in the account between the Lawrences and respondent, there were numerous debit as well as numerous credit items.

Appellant sought to introduce in evidence, as part of the cross-examination of respondent, an exhibit numbered 31, consisting of

a statement prepared by respondent and purporting to show, as of June 1, 1921, the account with Freddie Lawrence, husband of appellant. The statement included six items. The first was a note to the Farmers' Security Bank for $456, with interest from May 10, 1920, presumably the same note as secured by mortgage D. The second was a note for $525 with interest from February 4, 1920, presumably the same as that secured by mortgage B. The third was a mortgage on Day county land for $325, with interest from January 20, 1920, presumably the same as mortgage A. The fifth was a mortgage for $1,100, with interest from March 30, 1920, presumably the same as mortgage C. The fourth and sixth items related to what was thereafter testified to as the Karn mortgage for $1,500 and a mortgage to the Bank of Glencoe for $2,300. Appellant offered this exhibit in evidence as part of respondent's cross-examination. It was objected to as irrelevant, immaterial, and not cross-examination; and the exhibit was excluded. The following day, after respondent had purported to testify as to the dates and amounts of moneys paid to appellant and her husband and to third persons for them, as the proceeds of mortgages A, B, and C and advances on deed E, appellant made another attempt to introduce in evidence Exhibit 31 as part of the direct examination of Freddie Lawrence, who identified it as having been made by respondent. The objection and ruling thereon are as follows:

"Mr. Babcock: Objected to on the ground that it was objected to yesterday.

"Mr. Jorgenson: Since that time there has been quite a little evidence offered by defendant as to credits and the account. Now as he has mixed these two accounts together; we want to show the charges he has made against Freddie, that is the purpose of the offer.

"Mr. Babcock: The testimony would be immaterial anyway.

"The Court: I think this has all been testified to, hasn't it?

"Mr. Jorgenson: I do not think so.

"The Court: This relates to the farm loans?

"Mr. Jorgenson: Yes, but that is merely a conclusion on their part. We expect to show this money came from other loans; there has been no explanation of these other loans.

"The Court: It strikes the court that it would be confusing to the jury to put all these matters in that have been closed up; I do

not see how they have any bearing on the question being tried in this case.

"Mr. Jorgenson: It is our position and we want to show what these transactions were; they have gone into that by showing that they claim—

"By the Court: I do not know as it will do any harm; it may be received in evidence."

The most casual inspection of Exhibit 31, so admitted, provokes inquiry, not merely on account of items appearing thereon, but also on account of items not appearing thereon. Why does the note for $525, with interest from February 4, 1920, to June 1, 1921, appear on said statement of account when the note for $1,100, with interest from March 30, 1920, to June 1, 1921, also appears, if the latter note included the former debt, and if mortgage C satisfied mortgage B? Why, on this statement to Freddie Lawrence, made almost a year after deed E was executed, do none of the claimed advances made on deed E appear, when most of them were made to Freddie Lawrence, who also signed deed E? Was it carelessness? Was there another statement? Was there nothing owing? Was deed E delivered as security for advances? Was it delivered in blank as claimed by appellant? The trial court, which is in better position than this court to pass upon the credibility of witnesses, found the deed to have been given as security for advances; but was Exhibit 31 considered? On the one hand, respondent may have deemed it unnecessary to explain Exhibit 31, in view of the manner of its admission. On the other hand, while it is difficult to understand why appellant assigns as error the exclusion of this exhibit which was admitted, if this exhibit was received by the trial court on the theory that it had no bearing on the case but could do no harm, it might as well have been rejected.

The evidence in this case on behalf of respondent shows that, from 1917, respondent had been making loans to appellant and her husband. Over 20 checks were received in evidence to prove the making of the three loans secured by mortgages B and C and deed E. Respondent testified as to certain credits thereon and said they were all the credits to which the Lawrences were entitled on said loans. On cross-examination, he was asked whether he received from the Lawrences, to be applied on what they owed him in 1923, 339 bushels of wheat, 440 bushels of oats, and 517 bushels of bar-

ley; whether he had not also taken a chattel mortgage on grain to secure the $1,100 loan; and upon what other loans he applied the Lawrence credits. Objection was sustained to all said questions. The record raises some doubt as to whether either party to this litigation knew the exact status of their mutual account. Certainly the exclusion of the information sought to be elicited from respondent was not helpful in its determination.

We are of the opinion that this case should be retried; but appellant will be allowed to tax no costs in this court, for the reason that appellant has, in various ways, disregarded its rules and made the task of review exceedingly difficult. Among the errors assigned is that of the insufficiency of the evidence to sustain the findings. Over 20 checks, the dates and amounts of which must have been helpful to the trial court in determining the state of the account between the parties, were received in evidence. These exhibits are neither set out in the abstract nor are their material contents stated; yet this court has been called upon to determine, among other things, the correctness of an accounting. Appellant states that the abstract contains all the material evidence offered and received on the trial; but, as to these exhibits, the abstract refutes that statement.

Again appellant's first assignment of error relates to the exclusion of certain testimony. It does not, however, "refer by page and folio to that portion of the brief wherein the record of the ruling is found." To show the waste of time caused by the non-observance of that part of rule 4 quoted, and to show that it is not a mere technical trap set to catch the feet of the unwary, we review the work caused by the consideration of this assignment.

Appellant had been asked by her counsel whether, after delivery of deed E to respondent, respondent paid her anything on the purchase price of that land. Respondent's objection was sustained. This was assigned as error. The page and folio not being given, the index is consulted. The index discloses that the testimony of the witness begins on page 22 of the abstract; but it is not until page 39 that one discovers the question—not identical, but so similar as to leave little doubt as to it being the one referred to—and the ruling which was the basis of the assignment; in other words, over 17 pages of brief to be read to find the ruling complained of, yet not entirely fruitless, for the abstract proceeds: "The witness then continued: *'He did not pay me any money.'*"

Furthermore, in five places in the previous 17 pages, the witness had said: "I never got any money from Mr. Knight for that deed." "He never paid me that money." "He never paid me any money." "He never gave me that money on account of that deed." "Mr. Knight never paid the difference between those two mortgages and the $3,000 he agreed to pay for this land." Unless there be some mystic force and virtue in seven denials, there was no prejudice in sustaining the objection, though the objection (that the question was leading) was not proper.

Upon a careful review of the entire record, we are of the opinion that the judgment and order denying motion for new trial should be, and they are, reversed, but without costs in this court.

POLLEY, J., concurs.

SHERWOOD, P. J., and CAMPBELL and BURCH, JJ., concur in result.

BROWN, J., absent and not sitting.